IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARRYL DEWS,                     :     CIVIL ACTION
                                 :     NO. 20-5135
         Petitioner,             :
                                 :
    v.                           :
                                 :
ERIC TICE, et al.,               :
         Respondents.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    OCTOBER 31, 2022


**I.   INTRODUCTION**

Before the Court is Magistrate Judge Hey's Report and
Recommendations regarding Darryl (West) Dews' Petition for Writ
of Habeas Corpus (ECF No. 11). Petitioner Dews has filed
objections (ECF No. 13). The Commonwealth has responded to his
objections (ECF No. 15), and Petitioner has responded in turn
(ECF No. 17).

Broadly, Petitioner claims his counsel was ineffective for
(1) failing to call character witnesses to testify on his
behalf, (2) request an eyewitness identification jury
instruction, and (3) preserve a Brady claim. Petitioner also
claims that his Fifth Amendment rights were violated during voir
dire because he was absent during a "critical stage," and
because the Commonwealth failed to turn over discovery regarding

1

a police officer who made an eyewitness investigation. Finally, Petitioner seeks relief on the grounds that out-of-court identifications by two eyewitnesses were unduly suggestive. See Pet. for Writ of Habeas Corpus 8-17, 36-48, ECF No. 2.

Magistrate Judge Hey has recommended denying the petition. She recommends denying three of Petitioner's claims on the merits, and denying three because Petitioner failed to exhaust those claims, failed to demonstrate cause and prejudice for the default, and also because those unexhausted claims lack merit. See R. & R. 38, ECF No. 11.

For the reasons stated below, Magistrate Judge Hey's Report and Recommendation is adopted over Petitioner's objections.

## II.  BACKGROUND

### A.  Procedural History

In September 2013, Petitioner was convicted of twelve counts of robbery, three counts of conspiracy to commit robbery, and three counts of possessing an instrument of crime, arising from multiple armed robberies of individuals in barber shops in West Philadelphia. R. & R. 1-2. Eyewitnesses to and victims of the first robbery testified at Petitioner's trial that he and his accomplice wore ski masks that left their faces exposed. Id. at 14. Petitioner stole a number of items during the course of the robberies, including cell phones and wallets. Id. at 14-16.

Petitioner was ultimately located by use of "Find my iPhone" on one of the stolen phones, and his identity was corroborated by eyewitnesses to the final robbery. Id. at 16-17.

These were not Dews' first convictions; rather, these crimes were his second "strike" under Pennsylvania's three-strike sentencing statute. R. & R. 2. Accordingly, the mandatory minimum sentence for each robbery was ten (10) to twenty (20) years. Id.; see also 42 Pa. Cons. Stat. § 9714 (2020). The state trial judge thus sentenced Petitioner to an aggregate term of fifty (50) to one hundred (100) years imprisonment. R. & R. 2.

Petitioner appealed his conviction in state court, challenging the trial court's denial of a motion to suppress witness identifications, and the sufficiency and/or weight of the evidence to support the robbery convictions. Id. The Superior Court affirmed on appeal, and the Pennsylvania Supreme Court denied the petition for allowance of appeal. Id. at 3. Petitioner then filed a timely PCRA petition primarily asserting ineffective assistance of counsel (on a number of grounds), due process violations, and actual innocence. Id. at 3-4. Although Petitioner was then appointed counsel to bring the PCRA petition, his counsel withdrew because he believed Petitioner's claim was meritless. Id. at 5. The PCRA court then denied his petition, and the Superior Court affirmed. Id. at 5-6.

3

Petitioner sought review of his PCRA petition in the
Pennsylvania Supreme Court, which also denied review. Id. at 7.

Petitioner then filed for a writ of habeas corpus under 28
U.S.C. § 2254. See Pet. for Writ of Habeas Corpus, ECF No. 2.
Petitioner seeks habeas relief on the grounds that: (1) counsel
was constitutionally ineffective for failing to call a known
character witness; (2) counsel was constitutionally ineffective
for failing to instruct the jury on eyewitness identification;
(3) Petitioner was not present during jury selection; (4)
counsel was ineffective for failing to preserve a Brady claim on
direct appeal; (5) his due process rights were violated because
the State failed to produce all discovery; and (6) the
eyewitness identifications violated his Fifth and Fourteenth
Amendment rights. ECF No. 2 at 8, 10, 12, 13, 15-16. Petitioner
seeks "bail, evidentary [sic] hearing and/or remand." Id. at 21.
The petition was referred to Magistrate Judge Hey. See Order of
Oct. 29, 2020, ECF No. 4.

**B.   Magistrate Judge Hey's Report & Recommendations**

Magistrate Judge Hey first found that Petitioner had
properly exhausted his claim that counsel was ineffective for
failing to call certain character witnesses at trial or present
other mitigating evidence. R. & R. 18-20. But, she found that
Petitioner failed to demonstrate Strickland prejudice: "Judge

4

Bronson's opinion that there is no reasonable probability he would have sentenced Dews any differently if counsel had presented character witnesses at sentencing cannot reasonably be questioned in this case." Id. at 20-21. Petitioner's counsel at sentencing did argue for a reduced sentence in light of Petitioners' difficult upbringing. Id. at 20. And the state courts were reasonable in concluding that there was no reasonable probability that testimony from any useful character witnesses at sentencing would have affected the sentence. Petitioner thus was not prejudiced.

Next, while Petitioner properly exhausted his claim that counsel was ineffective for failing to request that the court provide a Kloiber jury instruction regarding the reliability of eyewitness identification, Magistrate Judge Hey found the claim had no merit. Id. at 22-24. The evidence presented at trial overwhelmingly suggested that the eyewitnesses could clearly see and identify Petitioner during and after the robberies. Id. Thus, the state courts reasonably rejected Petitioner's claim as meritless because the facts of his case indicated that he was not entitled to a Kloiber instruction as to all witnesses. Id. at 24-25. Accordingly, his counsel was not ineffective under Strickland.

Third, Magistrate Judge Hey concluded that Petitioner exhausted his claim that his due process rights were violated when the trial court failed to grant his motion to suppress certain suggestive identifications. Id. at 25-29. Based on the state court record, Magistrate Judge Hey found that there was no constitutional error, because the witnesses could see Petitioner sufficiently clearly and reliably during the actual robberies, such that seeing Petitioner in handcuffs after he was caught was not unduly suggestive. Id. at 27-29.

Magistrate Judge Hey concluded that Petitioner failed to exhaust his remaining three claims. First, Petitioner procedurally defaulted on his claim that counsel was defective for failing to strike a juror and/or that his rights were violated because he was not present for all of voir dire, because he violated a procedural rule barring more than one docket number on a notice of appeal. Id. at 30-32. Even if that procedural rule was not a proper ground to deny review on the merits, Judge Hey found that Petitioner's claim regarding jury selection was meritless, as the record indicated he was present for all substantive portions of voir dire. Id. at 32-33.

Second, Judge Hey found that Petitioner's claim that counsel was ineffective for failing to assert a Brady violation at trial was not exhausted because the claim for ineffectiveness

6

of counsel was not asserted until Petitioner submitted a 1925(b) Statement of Errors on appeal. Id. at 33-34. Because Petitioner failed to include this IAC theory for relief with his original claim of a Brady violation in his PCRA petition, Petitioner is unable to assert the IAC claim now. Id. at 34. In the event this Court disagreed, or in the event that Petitioner could overcome the procedural default by demonstrating cause and prejudice under Martinez, Magistrate Judge Hey found that the underlying claim was meritless because Petitioner failed to demonstrate that there was any agreement between a testifying co-felon and the Commonwealth. Id. at 35.

Finally, Petitioner's argument that he was prejudiced because the Commonwealth did not disclose the personnel file of an off-duty Officer and eyewitness to a robbery, was defaulted because he failed to raise the claim after his initial PCRA petition. Id. at 36. Moreover, Magistrate Judge Hey found that Petitioner failed to establish cause and prejudice to avoid the procedural default. Even if he could, the claim would fail on the merits because Petitioner did not demonstrate that there was a reasonable basis for him to be granted access to the Officer's personnel file for discovery. Id. at 36-38.

7

C.    **Petitioner's Objections**

Petitioner first objects to Magistrate Judge Hey's interpretation of the exhaustion doctrine, alleging that she has required more of the Petitioner than what is required by statute, and that he has properly presented his claims to the state courts. Pet'r's Objections to R. & R. ¶¶ 1-3, ECF No. 13.

Petitioner also disagrees with Magistrate Judge Hey's assessment that his counsel at sentencing did not act unreasonably and did not cause him prejudice, instead arguing that his counsel at sentencing failed to be "reasonably competent" by not calling character witnesses. Id. ¶¶ 9-10. Petitioner objects to the conclusion that the failure to instruct on Kloiber was not in error. Id. ¶ 13. Petitioner urges the Court to find that his attorney "fell below an objective standard of reasonableness" by failing to request the instruction. Petitioner also objects to the Magistrate's conclusion that the show-up identification was not unreasonably suggestive, arguing that the state court's failure to enumerate the factors of Neil v. Biggers in evaluating his claim was also improper. Id. ¶¶ 18-22.

Petitioner further objects to Magistrate Judge Hey's conclusion that three of his claims were procedurally defaulted, arguing that those claims were "rejected on the merits by [the]

trial court in which Petitioner had sought state postconviction relief" and the appellate court "affirmed without addressing [the] claim[s] and thus would be assumed to have [been] decided . . . on [the] same ground[s] as [the] trial court." Id. ¶ 25. Petitioner also argues that his state postconviction counsel was ineffective, which supports a finding of cause under Martinez v. Ryan. Id. ¶ 26.

## III. LEGAL STANDARD

Petitioner has objected to Magistrate Judge Hey's Report & Recommendation, taking issue with her interpretation of the exhaustion requirement, standard for ineffective assistance of counsel, jury instructions regarding eyewitness testimony, the reliability of eyewitness identifications, and Brady violations.

Under 28 U.S.C. § 636(b)(1), when a Magistrate Judge has issued a Report and Recommendation, and a party has filed written objections to such proposed recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." The Court may then "accept, reject, or modify in whole or in part," the magistrate judge's recommendations. Id.

The Court's review of Petitioner's underlying claims is deferential pursuant to the Antiterrorism and Effective Death

Penalty Act. The Court must defer to a state-court judgment on
the merits, unless the state court's decision was "contrary to,
or involved an unreasonable application of, clearly established
Federal law," or was "based on an unreasonable determination of
the facts in light of the evidence" presented to the state
court. 28 U.S.C. § 2254(d).

### A.   Exhaustion Requirement

A court may not grant a petitioner's application for a writ
of habeas corpus unless the petitioner either has exhausted the
remedies available in the courts of the State, petitioner has no
access to state processes to correct the judgment, or the
petitioner's attempt at state post-conviction relief would be
futile because of structural defects. 28 U.S.C. § 2254(b)(1).

In practice, this requires a petitioner only to "give[] the
state courts the opportunity to pass on the merits of a claim."
Hameen v. State of Delaware, 212 F.3d 226, 247 (3d Cir. 2000).
But, a petitioner must present both the federal claim's factual
and legal substance to the state court to properly exhaust a
state remedy. Bennett v. Superintendent Graterford SCI, 886 F.3d
268, 280 (3d Cir. 2018) (quoting McCandless v. Vaughn, 172 F.3d
255, 261 (3d Cir. 1999)). "In Pennsylvania, a defendant
'exhausts his state remedies for a federal claim either by
raising the claim on direct appeal or in a petition for

collateral relief under the PCRA.'" Id. (quoting Wilkerson v. Superintendent, 871 F.3d 221, 228-29 (3d Cir. 2017)).

Even if a petitioner has exhausted all of their claims in state court, a federal habeas court cannot review the decision of a state court if it rested on independent and adequate state-law grounds. Coleman v. Thompson, 501 U.S. 722, 729 (1991). A defendant's failure to observe state procedural rules can be an independent and adequate state ground barring federal habeas review. Martinez v. Ryan, 566 U.S 1, 9-10 (2012).

A petitioner may overcome a procedural default, such as failure to exhaust, by showing "cause for the default and prejudice from a violation of federal law." Id. at 10 (citing Coleman, 501 U.S. at 750). Cause exists "only where a prisoner is impeded or obstructed in complying with the State's established procedures." Id. at 13. A petitioner is prejudiced where the underlying claim of ineffective assistance of trial counsel "has some merit." Id. at 14. A petitioner may thus overcome procedural default of a claim of ineffective assistance of trial counsel when the state procedures require that such a claim be brought in a postconviction proceeding rather than on direct appeal, and petitioner's postconviction counsel was also ineffective. Id. at 13-14. But, this narrow exception to the "procedural default" bar of habeas petitions has not been

extended to ineffective assistance of appellate counsel. <u>Davila</u> <u>v. Davis</u>, 137 S. Ct. 2058, 2062-63 (2017).

Yet, even where an applicant has failed to exhaust all available state remedies, a court has power to deny a habeas corpus petition on the merits. 28 U.S.C. § 2254(b)(2). Similarly, where a state court has made an alternative merits decision--even when finding a Defendant procedurally defaulted during state appellate or collateral proceedings--the state court's alternative merits decision is owed deference. <u>See</u> <u>Rolan</u> <u>v. Coleman</u>, 680 F.3d 311, 319-21 (3d Cir. 2012).

**B.**   **Ineffective Assistance of Counsel**

The purpose of the Sixth Amendment requirement of assistance of counsel is to "ensure a fair trial." <u>Strickland v.</u> <u>Washington</u>, 466 U.S. 668, 686 (1984). Accordingly, the test for ineffective assistance of counsel is whether counsel was deficient as to so "undermine[] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Id.</u> The goal of the Sixth Amendment is "not to improve the quality of legal representation," but "to ensure that criminal defendants receive a fair trial." <u>Id.</u> at 689. The same standard for counsel applies at sentencing as at trial. <u>Id.</u> at 686.

12

The two-prong test set forth in Strickland commands a
petitioner first to show that "counsel's performance was
deficient," which "requires showing that counsel made errors so
serious that counsel was not functioning as the 'counsel'
guaranteed by the Sixth Amendment." Id. at 687. The second prong
requires a petitioner to demonstrate prejudice, in that
"counsel's errors were so serious as to deprive the defendant of
a fair trial, a trial whose result is reliable." Id. Prejudice
has thus occurred when an error had some effect on the judgment;
harmless error, "even if professionally unreasonable, does not
warrant setting aside the judgment of a criminal proceeding."
Id. at 691. A defendant must show a "reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." Id. at 694.

A petitioner must show that both prongs are satisfied to
have a conviction or sentence overturned. Id. at 687. Prejudice
is only presumed where a defendant shows that an actual conflict
of interest existed between defendant and attorney. Id. at 692.

The standard for effective assistance of counsel is
objective: an attorney must provide reasonably effective
assistance. Id. at 687-88. The reasonableness of counsel's
performance is measured against "prevailing professional norms."
Id. at 688. But the standard must be flexible, as "[n]o

13

particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. Courts defer to counsel's decisionmaking and use "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Moreover, when counsel makes a strategic decision not to raise a claim that is without merit or futile, counsel cannot be found inadequate. See, e.g., Premo v. Moore, 562 U.S. 115, 124 (2011); United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); Boston v. Mooney, 141 F. Supp. 3d 352, 368-69 (E.D. Pa. 2015) (finding that counsel's failure to request a jury instruction on witness bias did not fall below an objective standard of reasonableness because counsel reasonably concluded such an instruction would be futile).

C.   **Kloiber and Eyewitness Identifications**

A Kloiber instruction is a "cautionary instruction" to the jury "in certain eyewitness cases." Bey v. Superintendent Greene SCI, 856 F.3d 230, 234 (3d Cir. 2017). The instruction "is appropriate when the accuracy of the testimony of an eyewitness'

14

identification is 'so doubtful that the Court should warn the
jury that the testimony as to identity must be received with
caution.'" Commonwealth v. Brown, 196 A.3d 130, 163 (Pa. 2018)
(quoting Commonwealth v. Kloiber, 106 A.2d 820, 826-67 (Pa.
1954)). But, the testimony need not be received with caution--
meaning, an instruction is not necessary--"[w]here the
opportunity for positive identification is good and the witness
is positive in his identification and his identification is not
weakened by prior failure to identify, but remains, even after
cross-examination, positive and unqualified." Kloiber, 106 A.2d
at 826.

### D.  Due Process and the Reliability of Identifications

When a petitioner alleges that a show-up identification was
improper, it is "the likelihood of misidentification which
violates a defendant's right to due process," not the fact
itself that there was a show-up identification. Neil v. Biggers,
409 U.S. 188, 198 (1972). A witness is less likely to err in
identification where the testimony and identification are shown
to be reliable. See Manson v. Brathwaite, 432 U.S. 98, 114
(1977) ("[R]eliability is the linchpin in determining the
admissibility of identification testimony . . . ."). A court
generally looks to "the opportunity of the witness to view the
criminal at the time of the crime, the level of certainty

demonstrated by the witness at the confrontation, and the length
of time between the crime and the confrontation." Biggers, 409
U.S. 199-200; see also Perry v. New Hampshire, 565 U.S. 228, 238
(2012) ("[D]ue process concerns arise only when law enforcement
officers use an identification procedure that is both suggestive
and unnecessary." (citing Manson, 432 U.S. at 107, 109, and
Biggers, 409 U.S. at 198)).

     **E.**    **Brady Standard**

     There are three elements to a Brady violation: "The
evidence at issue must be favorable to the accused, either
because it is exculpatory, or because it is impeaching; that
evidence must have been suppressed by the State, either
willfully or inadvertently; and prejudice must have ensued."
Strickler v. Greene, 527 U.S. 263, 281-82 (1999). The
prosecution has a duty to disclose such information, even if it
has not been requested. Id. at 280 (citing United Sates v.
Agurs, 427 U.S. 97, 107 (1976)). This information includes
information known to police but not the prosecutor; it is the
duty of the prosecutor to uncover evidence that is favorable to
the defense and known by government agents. Kyles v. Whitley,
514 U.S. 419, 433-34, 437-38 (1995). Evidence is material "if
there is a reasonable probability that, had the evidence been
disclosed to the defense, the result of the proceeding would

have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985); <u>see also</u> <u>Turner v. United States</u>, 137 S. Ct. 1885, 1894 (2017) (framing the inquiry as the centrality of undisclosed evidence to the main evidentiary points).

But, <u>Brady</u> does not create a constitutional right to discovery in a criminal case; rather, it merely ensures a defendant's due process rights are satisfied by creating a minimum requirement of disclosure of material exculpatory evidence to the defense. <u>See</u> <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559-60 (1977). So, for instance, the prosecution is not required to disclose the names of all witnesses that the prosecution intends to call to testify unfavorably against the defendant. <u>Id.</u>

## IV.  DISCUSSION

### A.  <u>Petitioner's Objections to the Non-Defaulted Claims</u>

#### 1.  <u>Claim 1: Character Witnesses</u>

Petitioner has not demonstrated any prejudice that resulted from his sentencing counsel's failure to call character witnesses at sentencing. Rather, the sentencing court explicitly stated that, given Petitioner's history, character witnesses would not have had any effect on his sentencing decision. <u>Commonwealth v. Dews</u>, CP-51-CR-0001772-2012, Opinion, at 5 (Pa.

Ct. Com. Pl. May 30, 2019). Thus, Petitioner fails to demonstrate that his counsel was ineffective under <u>Strickland</u>.

Moreover, Petitioner has not shown that the sentencing judge's decision was contrary to or an unreasonable application of clearly established federal law, as required under AEDPA to give this Court jurisdiction to review his claim.

### 2.   Claim 2: The Kloiber Instruction

Petitioner's objections to the Magistrate's recommendation regarding the <u>Kloiber</u> claim also fail. A defendant is entitled to a <u>Kloiber</u> instruction when "a witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions." <u>Kloiber</u>, 106 A.2d at 826-27.

The Court of Common Pleas, in affirming Petitioner's sentence, found that one eyewitness to one of the robberies picked out Petitioner's photograph from a photo array approximately four days after the robbery, "stating he was 85% certain" that he had picked the person who robbed him; two months after the photo lineup, that eyewitness "did not hesitate" in identifying Petitioner in a lineup. <u>Commonwealth v. Dews</u>, CP-51-CR-001366-2012, at *6 (Pa. Ct. Com. Pl. June 10, 2014), attached to Pet. for Writ of Habeas Corpus, ECF No. 2, at

51 [hereinafter Dews, June 10, 2014 Op.]. A different eyewitness positively identified Petitioner from a photo array containing his photograph approximately a week after that witness was robbed. Id.

A Kloiber instruction was given with respect to one particular eyewitness who failed to identify Petitioner in a lineup after the robbery and prior to trial. Commonwealth v. Dews, CP-51-CR-0001366-2012, at *7-8 (Pa. Ct. Com. Pl. May 30, 2019), attached to Pet. for Writ of Habeas Corpus, ECF No. 2, at 80 [hereinafter Dews, May 30, 2019 Op.].

Petitioner was ultimately apprehended in part on the identification of Officer Jackson, an off-duty police officer who was at a barbershop while it was being robbed. Officer Jackson testified at trial that the barbershop was well-lit at the time of the robbery, and that Petitioner was not wearing anything to cover his face. Dews, June 10, 2014 Op., at *7. Officer Jackson gave the description of Petitioner, as well as his co-conspirators and their vehicle, to another police officer, and then positively identified Petitioner approximately fifteen minutes later, when Petitioner was found. Id.

Although Petitioner states that there were witnesses who might not have been able to see the robbers properly because they wore ski masks, Pet'r's Reply 3, ECF No. 17, the jury's

19

decision either not to believe those witnesses, or to believe other eyewitnesses more, does not appear to be a "clearly erroneous" determination of the facts. As the state court was not wrong in only providing the Kloiber instruction with regard to the one eyewitness who specifically made inconsistent identifications, there can be no ineffective assistance of counsel claim. Neither the state court nor Magistrate Judge Hey made a clearly erroneous determination of the facts or an unreasonable application of the law. Thus, this claim must also fail on the merits, and the Court adopts the Magistrate's Recommendation.

3.   Claim 6: Suggestiveness of Identifications

Petitioner argues that the Report and Recommendation failed to properly consider the Neil v. Biggers factors. Pet'r's Objections ¶ 21. Petitioner is wrong. Neil v. Biggers directs lower courts to look to factors such as "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation" in "evaluating the likelihood of misidentification." 409 U.S. at 199-200. In her Report and Recommendation, Magistrate Judge Hey points to the

state judge's discussion of the exact same factors. R. & R. 28.
It is irrelevant that Magistrate Judge Hey and Judge Bronson of
the Pennsylvania Superior Court did not directly refer these
factors as "the five Biggers factors," as Petitioner does,
Pet'r's Objections ¶ 19, so long as the facts of Petitioner's
case were applied to the relevant factors to assess the
likelihood of misidentification by the witnesses. Additionally,
Petitioner fails to show how or why any suggestiveness of the
show-up created an impermissible likelihood of
misidentification, in the face of numerous other eyewitnesses
and other corroborating evidence. This objection is thus
meritless and the Court will adopt Magistrate Judge Hey's
Recommendation regarding Petitioner's Claim 2.

> **B.    Petitioner's Objections to the Defaulted Claims**

> **1.   Claim 3: Absence During a Critical Stage**

Petitioner misconstrues the standard for "fair
presentation." Petitioner states that he did not procedurally
default because he brought the claim to the attention of the
PCRA court. See Pet'r's Objections ¶ 25-26. But, from a habeas
court's perspective, a claim is only "fairly presented" to a
state court when it is based on substantially the same factual
and legal basis as the petitioner brings in the federal habeas
proceeding. See, e.g., Bennett, 886 F.3d at 280. Petitioner

initially presented this claim in a pro se PCRA petition on the grounds that counsel was ineffective "for failing to move to strike juror number 10, who once worked as the trial judge's law clerk, because Dews and/or his attorney were absent from the courtroom at the time of the disclosure." R. & R. 3-4. On appeal of the denial of his PCRA petition, Petitioner framed the claim as ineffective assistance of counsel for "failing to move to strike juror 10." Id. at 5. But, "[i]n his brief to the Superior Court . . . [h]e altered the remaining claim, regarding juror 10/venireperson 14, which he no longer presented as an ineffectiveness claim, but instead for the first time presented it as a denial of his due process and jury trial rights." Id. at 6. The Superior Court denied his petition on procedural grounds, but also noted that it would have denied the appeal on the merits, as "each of Appellant's claims is waived or otherwise merits no relief." Id. at 7 (quoting Commonwealth v. West, 226 A.3d 648 (table) (Pa. Super. Jan. 16, 2020)). In his federal habeas petition, Petitioner now frames the claim regarding Juror 10/venireperson 14 as a violation of his Fifth Amendment rights, on the grounds that, "[d]uring the jury selection process juror let it be known that he used to work for the judge. Although counsel was present petitioner wasn't present in the court room." Pet. for Writ of Habeas Corpus 12, ECF No. 2. So,

22

Magistrate Judge Hey properly concluded that Petitioner's claim is barred because his claim was not fairly presented to the state court. Even if Petitioner can avoid procedural default, the claim fails on the merits.

The Pennsylvania Superior Court recently concluded that the requirement that an appellant list only one docket number in a notice of appeal has no basis in Rule 341, and must be abolished, as the Pennsylvania Rules of Appellate Procedure must be "liberally construed to effectuate justice." Commonwealth v. Johnson, 236 A.3d 1141, 1148 (Pa. Super. 2020). Johnson thus effectively overruled Commonwealth v. Creese, on that issue, which was the basis for the Superior Court's quashal of Dews' PCRA appeal. Commonwealth v. West, No. 743 EDA 2019, 2020 WL 250506, at *2-3 (Pa. Super. Jan. 16, 2020) (citing Commonwealth v. Creese, 216 A.3d 1142 (Pa. Super. 2019)). Given the factual similarity of Petitioner's notices of appeal to those in Johnson, wherein appellant listed each related docket number on each of his properly filed notices of appeal, see Johnson, 236 A.3d at 1144, it is plausible that the application of Rule 341 would not be adequate and independent state grounds to bar review on the merits.[1]

---

[1] Respondent concedes that the Pennsylvania Superior Court's decision in Johnson may render Rule 341 an inadequate ground for

Regardless, the Court will adopt Magistrate Judge Hey's Recommendation on the merits. The juror in question was not disqualified from serving on the jury based on the colloquy in which he admitted he had clerked for the trial judge. R. & R. 32. And, although Petitioner was not present when the trial judge initially recognized the juror (before voir dire had begun), Petitioner was present throughout all of voir dire and had ample opportunity to consult with counsel regarding his concerns for bias or other juror defects. Id. at 29-32. So, the PCRA court's determination that the claim was meritless was not "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1); see also Dews, May 30, 2019 Op., at 10-11 (finding that the juror's prior clerkship for the trial judge was not proper grounds for dismissal of the juror for cause as the juror "denied that these relationships would in any way interfere with his ability to be fair to both parties").

> 2.   Claims 4 and 5: Exculpatory Evidence and Cause and Prejudice under Martinez

Giving the pro se motion the benefit of the doubt and assuming Petitioner has demonstrated cause, Petitioner still

---

procedural default. See Resp. in Opp'n to Pet. for Writ of Habeas Corpus 6 n.5, ECF No. 9.

fails to demonstrate that he was prejudiced by any form of procedural default, thus barring this Court's review of his claims.

First, on the merits, Petitioner's claim fails to set forth a Brady violation. Brady did not create a "general constitutional right to discovery" for a defendant in a criminal case. Weatherford, 429 U.S. at 559. Petitioner's claim that he was prejudiced by the Commonwealth's failure to disclose a plea agreement with a co-felon fails because there was no agreement between the co-felon and the Commonwealth at the time the co-felon testified against Petitioner. The PCRA Court stated that, although the co-felon testified that he pled guilty to two of the robbery charges and agreed to testify against Petitioner in return for immunity for one of the robbery charges, there was no other agreement or understanding between the co-felon and the Commonwealth. Dews, May 30, 2019 Op., at 12-13. Thus, there could be no Brady violation underlying any ineffective assistance of counsel, as Petitioner has not shown that the evidence was favorable, suppressed by the Commonwealth, and material. See R. & R. 35. The state court and Magistrate Judge Hey did not err in arriving at this conclusion.

Similarly, even if Petitioner could demonstrate cause and prejudice under Martinez, his second Brady claim regarding

25

Officer Jackson's personnel file is meritless. Petitioner has made no showing that Officer Jackson's personnel file could reasonably exculpate Petitioner or impeach the Commonwealth's evidence.

**V.   CONCLUSION**

Petitioner's objections are meritless. Accordingly, Magistrate Judge Hey's Report and Recommendation concluding that the petition for a writ of habeas corpus be denied, is adopted. An appropriate order follows.